UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
UNITED STATES OF AMERICA,

              MEMORANDUM & ORDER

   v.              03-CR-1382 (NGG)

ANTHONY URSO, et. al.,

   Defendants
----------------------------------------------------------X
GARAUFIS, United States District Judge.

   On January 23, 2006, I held a status conference with all defendants who remain under indictment to discuss the trial groupings and schedules of defendants in the above matter. Before the court are also two motions that relate to defendants' trials. Defendant Riccardi has moved that this court revoke Riccardi's pretrial detention, arguing that his pretrial detention violates his due process rights, and defendant Romanello has moved to have his trial severed from all other co-defendants.

   For the reasons set forth in this Memorandum and Order: (1) Defendant Riccardi's and Defendant Romanello's motions are denied; (2) I consolidate Baldassare Amato, Anthony Basile, Michael Cardello, Peter Cosoleto, Joseph DeSimone, Steven LoCurto, John Palazzolo, and Richard Riccardi into the first trial group ("Urso I"); and (3) I consolidate Louis Attanasio, Robert Attansio, Peter Calabrese, and Patrick Romanello into the second trial group ("Urso II").

**I.  BACKGROUND**

   Urso is a multi-defendant prosecution of alleged members of the Bonanno crime family under, *inter alia*, the Racketeer Influenced and Corrupt Organizations Act, 8 U.S.C. §§ 1961 *et seq*. ("RICO"). The Urso superseding indictment, dated January 20, 2004, alleges that the 28 charged defendants participated in a RICO conspiracy involving, *inter alia*, loansharking, illegal

gambling, mail fraud, and murder, in furtherance of the Bonanno organized crime family ("Bonanno OCF"). (See Superseding Indictment ("S-1") ¶¶ 1-12.) In a letter dated June 21, 2004, after accepting pleas from all defendants not charged with murder, the Government requested dividing the remaining sixteen defendants into five different trial groups. (Gov't Ltr., dated June 21, 2004.) Since that time, four more defendants have pled guilty, leaving a total of twelve defendants: Baldassare Amato and Anthony Basile (charged with the predicate act murders of Infanti, Tomasulo, DiFalco, and Perrino); Michael Cardello, Peter Cosoleto, Joseph DeSimone, and John Palazzolo (charged with the predicate act murders of Coglitore, Mauro, and Perrino); Steven LoCurto and Richard Riccardi (charged with the predicate act murders of Napolitano, Capasio and Platia); Patrick Romanello (charged with the predicate act murders of Mazzeo and Tuzzio); and Louis Attanasio, Robert Attanasio, and Peter Calabrese (charged with the predicate act murder of Bonventre). (See id.)

Six of these defendants have been separated at the government's request into the first trial group, which contains Amato, Basile, Cardello, Cosoleto, DeSimone, and Palazzolo. The remaining defendants are LoCurto, Riccardi, Romanello, Louis Attanasio, Robert Attanasio, and Calabrese, the trial(s) of whom the court has not yet scheduled.

In April 2005 Urso I defendants Barbieri, Cosoleto, DeSimone and Palazzolo moved for severance from the trial of co-defendants Amato, Basile and Cardello, because they are charged with different predicate acts of murder. In my Memorandum and Order, dated May 3, 2005 ("May 3, 2005 M&O"), I denied those motions, finding that the jury will be capable of "sorting out what evidence bears on the guilt of any single defendant," that the trial will be relatively small and uncomplicated, and that as all defendants are charged with participation in at least one

2

murder, that the danger of the jury imputing the culpability of defendants "charged with especially serious crimes to others charged with less serious crimes is absent here." (Urso slip op., May 3, 2005, at 20.)

On January 11, 2006, I issued an order directing the parties to discuss whether the trials of defendants should be consolidated into one joint trial, scheduled to begin on or about May 8, 2006. (Order, dated January 11, 2006.) Prior to the status conference, the government proposed consolidating all defendants into a single trial, estimating that such a trial would last up to three and a half months. (Gov't Ltr., dated Jan. 20, 2006, at 3.)

At the January 21, 2006 status conference, a number of defendants put their objections to consolidation on the record. Defendants argued that the joinder of all defendants in a single trial would prejudice defendants because the resulting proceeding would be an unmanageable "mega-trial" disapproved of by the Second Circuit, and cause undue "spillover" evidence which would substantially prejudice the defendants. (Transcript of Status Conference, dated Jan. 23, 2006 ("S.C. Tr."), at 8-10, 14-15, 16-17, 21, 28.) Defense counsel for Louis Attanasio, Robert Attanasio, Calabrese, DeSimone,[1] and Romanello said that the change in the scope of representation of a defendant in such a trial might require them to withdraw if defendants were tried jointly. (S.C. Tr. 10-11, 14-16).

After the status conference, counsel for Romanello wrote to the court and moved for a separate trial from other Urso defendants, arguing that Romanello is the only defendant

---

[1] Defense counsel for DeSimone, who is to be tried in Urso I, also objected to a change in the trial date for Urso I from late March to early May, 2006. (S.C. Tr. 18-19, 21, 28.) As I stated to counsel in the conference, the court sets a trial schedule in its own sound discretion (S.C. Tr. 19-20), and to the extent that counsel moves to have Urso I sent to a judge who can accommodate counsel's unarticulated personal schedule, I deny that request.

3

implicated in the Mazzeo and Tuzzio murder predicate acts, and stating that if the trial of Romanello were consolidated with any other defendant, that counsel may need to withdraw. (Romanello Ltr., dated Jan. 24, 2006, at 1-2.)

Related to the trial schedule of Urso defendants, on January 6, 2006, Riccardi moved for this court to reconsider the pretrial detention order of Magistrate Judge Robert M. Levy, issued December 3, 2004. (Riccardi Ltr., dated Jan. 6, 2006, at 1.) In his motion, defense counsel argues that Riccardi's pretrial detention, which began in January, 2005, is excessive and violative of his due process rights. (Id. at 1-2.)

**II.    DISCUSSION**

**A.    Consolidation of Defendants into Two Trial Groups**

Rule 8(b) of the Federal Rules of Criminal Procedure allows the government to charge defendants together when "they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed. R. Crim. P. 8(b). Rule 14 of the Federal Rules of Criminal Procedure, in contrast, permits a district court to grant severance of defendants when, "it appears that a defendant or the government is prejudiced by a joinder." Fed. R. Crim. P. 14. The trial judge's discretion provided for in Rule 14 is limited by the strong preference in the federal system for defendants who have been indicted together to be tried jointly. Zafiro v. United States, 506 U.S. 534, 537 (1993). Accordingly, "it is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." Id. at 540 (internal citations and quotations omitted).

Where a defendant or the government is prejudiced in a joint trial, the decision whether to sever is "committed to the sound discretion of the trial judge." United States v. Diaz, 176 F.3d

4

52, 102 (2d. Cir. 1991) (internal quotations omitted). Severance is justified "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt." Zafiro, 506 U.S. at 539. "Acknowledged in this policy [favoring joint trials] is the inevitable tolerance of some slight prejudice to codefendants, which is deemed outweighed by the judicial economies resulting from the avoidance of duplicative trials." United States v. Cardascia, 951 F.2d 474, 482-83 (2d Cir. 1991) (further noting that "the risk of inconsistent verdicts resulting from separate trials, and the favorable position that later tried defendants obtain from familiarity with the prosecution's strategy is obviated through multidefendant trials." Id. at 483.) This court has a preference for joint trials of defendants alleged to have participated in the same RICO conspiracy. United States v. Urso, 369 F. Supp. 2d 254, 269-70 (E.D.N.Y. 2005) (Garaufis, J.).

Despite the Second Circuit's deference to the consolidation decisions of trial courts, the Second Circuit has admonished district courts to avoid large, complicated, multi-defendant "mega-trials" whenever possible. United States v. Casamento, 887 F.2d 1141, 1152-53 (2d Cir. 1989). A trial judge considering whether to consolidate the trials of a large number of defendants should obtain from the government an estimate of the trial length, and if the prosecutor provides a good faith estimate that the trial will exceed four months, the judge "should oblige the prosecutor to present a reasoned basis to support a conclusion that a joint trial of all the defendants is more consistent with the fair administration of justice than some manageable division of the case into separate trials for groups of defendants." Id. at 1152. Furthermore, a court should only consolidate more than ten defendants into a single trial lasting over four months if there is an "especially compelling" reason for doing so. Id. at 1152-53.

In my January 11, 2006 Order, I asked the parties to present their objections to the consolidation of all defendants in Urso in a single trial. Defendants have convinced me that a trial involving all twelve defendants is undesirable. As a result, I need not reach the question as to whether such a trial would violate the Second Circuit's instructions in Casamento. Instead, this court adds Riccardi and LoCurto to Urso I, and will try the remaining four defendants (Louis Attanasio, Robert Attanasio, Calabrese, and Romanello) in a second joint trial ("Urso II") to begin in December 2006.

I have already ruled that a joint trial of six defendants (Amato, Basile, Cardello, Cosoleto, DeSimone, and Palazzolo) in Urso I is permissible. (Urso slip op., May 3, 2005, at 20.) Therefore, before me are two consolidation questions: whether the additional consolidation of defendants LoCurto and Riccardi into Urso I would violate the rights of any defendants in Urso I, and second, whether a joint trial of Louis Attanasio, Robert Attansio, Calabrese, and Romanello would violate the rights of any of these defendants. I decide both questions in the negative.

### 1.   *Urso I Trial Group*

In United States v. Locascio, 357 F. Supp. 2d 536, 543 (E.D.N.Y. 2004) (Amon, J.), Judge Amon enumerated the factors to consider when weighing whether or not to sever defendants who were indicted together:

> [(1)] [T]he number of defendants and the number of counts; [(2)] the complexity of the indictment; [(3)] the estimated length of the trial; [(4)] disparities in the degrees of involvement by defendants in the overall scheme; [(5)] possible conflict between various defense theories or trial strategies; and especially, [(6)] prejudice from evidence admitted only against co-defendants but which is inadmissible or excluded as to a particular defendant.

Id. (quoting United States v. Gallo, 668 F. Supp. 736, 749 (E.D.N.Y. 1987)).

Considering the first and third factors of the Locacio framework, this proposed trial will increase the number of defendants and the alleged racketeering acts, and, from the government's good faith estimates, I find that this will result in a trial lasting approximately three months, which is a longer trial than if these defendants were tried separately. However, an Urso I trial group consisting of these eight defendants does not approach the type of "mega-trial" discouraged in Casamento, in which the Second Circuit considered a joint trial of 21 defendants lasting seventeen months, with forty thousand pages of trial transcript, thousands of exhibits and the testimony of more than 275 witnesses. Casamento, 887 F.2d at 1149. In that decision, the Second Circuit held that the trial judge generally has the discretion to join the trials of defendants who are indicted together, provided that the joint trial is expected to last less than four months and contain not more than ten defendants. Id. at 1151-52. These conditions are met here.

Moreover, all other factors militate in favor of trying these defendants jointly. Regarding the second factor, the complexity of the indictment, the Second Circuit has held that "the nature of the evidence and the legal concepts" of a prosecution alleging that defendants furthered a RICO criminal enterprise are not sufficiently complicated to weigh against consolidation. Casamento, 887 F.2d at 1150. This remains true even where, as here, the case is designated as complex. Urso is so designated because the voluminous nature of the evidence and the number of defendants required a longer period of time to prepare for trial. However, the allegations in the indictment, that the defendants committed crimes including murder, loansharking, and gambling in the furtherance of a crime organization, are not difficult for a jury to comprehend. See id. (RICO prosecution is less difficult to comprehend than "a complex anti-trust case involving abstruse economic theories or an employment discrimination case involving technical

statistical evidence and formulae")  Furthermore, as each defendant group in Urso I is alleged to have participated in analytically discrete predicate acts, I find that consolidating Riccardi and LoCurto in Urso I will not impair the jury's role of weighing the evidence.

As to the fourth factor, disparities in alleged involvement in the RICO conspiracy, all eight defendants are charged in the same RICO conspiracy, and are alleged to have committed serious racketeering acts, including murder.  As a result, no defendant is alleged to be a relatively minor conspiracy participant tainted by "larger" players in the conspiracy.  (See Urso slip op., May 3, 2005, at 20.)  Regarding the fifth factor of conflicts among the defendants, no Urso defendant has alleged a conflict in trial strategy or theory with any other defendant.  Even if a conflict became apparent, the Second Circuit has held that conflicts "inevitably arise in multi-defendant trials, and to hold that they require severance would effectively ban this type of trial; we decline to impose such a ban."  Casamento, 887 F.2d at 1155.

I also find that the prejudice caused by likelihood of evidence admitted against one defendant being inadmissible against another defendant is low, because the evidence that the prosecution will use in the trial is likely admissible against all defendants as evidence of the RICO conspiracy.  The Second Circuit has held that in RICO cases involving a common conspiracy, evidence that shows the "existence and nature" of the RICO enterprise and a "pattern of racketeering activity" is relevant to the charges against all RICO defendants.  United States v. Diaz, 176 F.3d 52, 103 (2d Cir. 1999).  Thus, the Second Circuit expresses a preference for trying defendants charged in the same RICO conspiracy together, and applies a deferential standard in reviewing a decision not to sever.  See id. (upholding denial of severance motion in a trial of all twelve defendants charged in RICO conspiracy); United States v. Cervone, 907 F.2d

332, 341 (2d Cir. 1990) (affirming consolidation of eighteen defendants charged in RICO conspiracy because a decision about whether to sever is "virtually unreviewable," and that there must have been prejudice so substantial as to amount to a "miscarriage of justice"); United States v. Gotti, No. S5-02-CR-743, 2004 U.S. Dist. LEXIS 4950, at *17 (S.D.N.Y., Mar. 26, 2004) (denying motion to sever defendants in a six-defendant trial because "[t]here is a strong presumption against severance when, as here, the defendants are indicted as part of a common scheme or plan").  Further, as I previously held in denying the severance motions of the original six Urso I defendants, whatever prejudice is created by the presentation of evidence of unrelated acts can be limited through jury instructions.  (Urso slip op., May 3, 2005, at 20); see also Cervone, 907 F.2d at 341 (defendants properly consolidated in light of the limiting instruction designed to safeguard against the possibility of "spillover" evidence).  Accordingly, there is little prejudice created by "spillover" evidence in joining these eight defendants.

      These factors, viewed together and focusing especially on the prejudice factor, support a joint trial of these eight defendants.  A single trial of the above eight defendants increases the number of joint defendants and charges, and will undoubtedly add to the length of trial that each defendant would face.  However, the charges in the indictment are not difficult for a jury to comprehend, stem from the same alleged RICO conspiracy, the alleged predicate acts are substantially similar in nature and gravity for each defendant, and there are no apparent conflicts in defendants' defense theories and strategies.  Lastly, the likelihood of "spillover" prejudice is slight as all evidence of the RICO conspiracy and racketeering acts are admissible against all the defendants.  As there is little prejudice in consolidating this matter, the added trial time for each defendant does not outweigh the factors in favor of consolidation.

I therefore direct that defendants Amato, Basile, Cardello, Cosoleto, DeSimone, LoCurto, Palazzolo, and Riccardi be tried jointly in Urso I.

### 2. *Urso II* Trial Group

For the same reasons as stated above, I do not find that a group trial consisting of Calabrese, Louis Attanasio, Robert Attanasio, and Romanello violates these defendants' constitutional rights. There are fewer defendants and alleged predicate acts in this proposed trial group, and the trial will be of a shorter duration than in the one I find permissible in Urso I.[2] A RICO conspiracy trial is not unduly complicated for the jury to understand, and all defendants face allegations of similar gravity. No defendant has alleged a conflict in defense strategies or theories. As these defendants are charged with participation in the same RICO conspiracy, there is little danger of prejudice created by spillover evidence in trying these defendants together, because evidence of the RICO conspiracy is admissible as to all defendants. Accordingly, I find a joint trial of Calabrese, Louis Attanasio, Robert Attanasio, and Romanello permissible in view of the principles outlined by the Second Circuit in Casamento.

Defendant Romanello further requests severance from all other Urso defendants, arguing that he is the only defendant alleged in the predicate act murders of Mazzeo and Tuzzio.[3] As explained supra, the Second Circuit has made clear that it is within my discretion whether to

---

[2] The government estimated that the trial of Romanello and that of Louis Attanasio, Robert Attanasio, and Calabrese would each last four to six weeks. Even assuming that no trial time is saved by consolidating these defendants into a single trial group, I find that eight to twelve weeks is a reasonable duration for a RICO trial involving alleged murder predicate acts.

[3] The assertion of defense counsel to Romanello that this court severed Romanello's trial from that of his co-defendants is contrary to the facts. (Romanello Ltr., dated Jan. 24, 2006, at 2.) While Romanello was not included in Urso I, I have never held that Romanello's trial should be severed from the trial of any other co-defendant not in the Urso I trial group.

10

grant this request. I deny Romanello's motion for severance into a single trial because I find that the defendant has been on notice of the likely consolidation with all defendants not scheduled in Urso I, and that his consolidation into Urso II does not substantially prejudice him.

In support of his application, Romanello's counsel states that he had only prepared for a single defendant trial, and that he would likely request a withdrawal from his representation of Romanello should his trial be consolidated with any other defendants. (Romanello Ltr., dated January 24, 2006, at 1-2.) As this trial is scheduled for December 2006, Riccardi has sufficient time to obtain the services of a new attorney should that prove necessary.

Accordingly, I direct that Louis Attanasio, Robert Attanasio, Calabrese, and Romanello be tried jointly in Urso II.

**B.    Riccardi's Motion to Revoke Pretrial Detention Order**

Riccardi has been detained pending trial since January 2005 pursuant to Magistrate Judge Levy's pretrial detention Order, dated December 3, 2004 ("pretrial detention Order"). (Riccardi Ltr. Br., dated Jan. 6, 2006, at 1.) In a letter brief sent to the court on January 6, 2006, Defendant Riccardi moved for this court to revoke the pretrial detention Order. (Id.)

The Bail Reform Act of 1984 ("BRA") provides that "[i]f a person is ordered detained by a magistrate, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145. The BRA has been interpreted to provide that "[a] district judge must undertake a de novo review of a magistrate judge's decision to release or detain a defendant." United States v. Gotti, 358 F. Supp. 2d 280, 282 (S.D.N.Y. 2005). Thus, this court "should fully reconsider a

11

magistrate's denial of bail and . . . should not simply defer to the judgment of the magistrate, but reach its own independent conclusion." United States v. Leon, 766 F.2d 77, 80 (2d Cir. 1985).

The BRA directs the court to impose the least restrictive bail conditions necessary to protect the safety of the community and reasonably assure the defendant's appearance at trial. 18 U.S.C. § 3142(c)(1)(B). However, where there is no condition or combination of conditions that would assure adequate pretrial supervision, the Act directs the court to order the defendant's detention pending trial. 18 U.S.C. § 3142(e).

As Riccardi's detention is based on danger to the community, and not upon the risk of flight, I must consider the following factors in deciding whether there are conditions of release that will reasonably assure the safety of the community: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by Riccardi's release. 18 U.S.C. § 3142(g). Riccardi is presumed innocent, and it is only a "limited group of offenders" who should be denied bail pending trial. Gotti, 358 F. Supp. 2d at 283 (quoting United States v. Shakur, 817 F.2d 189, 195 (2d Cir. 1987)).

In the superseding indictment, filed in this court on January 20, 2005, Riccardi is alleged to have conspired to murder and murdered Dominick "Sonny Black" Napolitano in 1981 and Robert Capasio in 1986 in the furtherance of the Bonanno OCF. (S-1 ¶¶ 33-35, 44-46.) There is little doubt that the charges in the indictment, which allege that Riccardi conspired to and

12

committed two predicate act murders, are serious.[4]

At the December 3, 2004 bail hearing, the prosecution proffered the following in support of pretrial detention: that in a prior trial in front of this court, witnesses identified Riccardi as a "soldier" in the Bonanno OCF and that Riccardi has been associated with the Bonanno OCF since 1981 (Bail Hearing Transcript, dated Dec. 3, 2004 ("B.H. Tr."), 10), that he aided and abetted in the murders of Napolitano, Capasio, and Plathia by being on hand during the murders for assistance,[5] and then disposing of their bodies (id. at 11-12), that he pled guilty in 2002 to loan sharking, a crime of violence, in which he and at least one co-defendant were alleged to have been members of the Bonanno OCF (id. at 14, 28), and that since his arrest in that crime Riccardi was captured on surveillance by law enforcement as having associated with other members of the Bonanno OCF. (Id. at 15).[6] At the end of the hearing, Judge Levy found that Riccardi's long-time association and membership in the Bonanno OCF, along with the current indictment which alleges crimes of violence, and the recent guilty plea to a violent crime establish that Riccardi is a danger to the community. (Id. at 30.)

After a de novo review, I adopt Judge Levy's finding that Riccardi is a danger to the community. The Urso superseding indictment alleges that Riccardi participated in the

---

[4] At Riccardi's bail hearing on December 3, 2004, defense counsel conceded that "charges of this nature are very serious . . . ." (Bail Hearing Transcript, dated Dec. 3, 2004 ("B.H. Tr."), 9.)

[5] The prosecution alleges Riccardi's involvement in the Plathia murder, but Riccardi is not charged with that act in the indictment.

[6] At the bail hearing, the government and defense counsel exchanged a lengthy colloquy regarding the merits of Riccardi's detention compared with other Urso defendants. (See B.H. Tr. 16-17.) As each pretrial detention should be considered on its own merits, I find this argument unpersuasive.

commission of two murders, crimes of violence. See United States v. Ciccone, 312 F.3d 535, 542 (2d Cir. 2002) (holding that a racketeering conspiracy is a crime of violence if any of the predicate acts are violent in nature). That, in addition to Riccardi's recent prior conviction for loan sharking with other members of organized crime, and evidence that Riccardi has been a long-time "soldier" within the Bonanno OCF, an enterprise prior found to have threatened and intimidated witnesses and other acts of obstruction of justice, provide clear and convincing evidence that he is a danger to the community and that release on bail under any circumstances would inadequately protect the public. See United States v. Ferranti, 66 F.3d 540, 544 (2d Cir. 1995) (denying bail for defendant charged with conspiracy to commit arson, arson resulting-in-death, witness tampering and mail fraud); United States v. Orena, 986 F.2d 628, 633 (2d Cir. 1993) (overturning district court order releasing defendants charged with RICO violations based on predicate acts of murder, conspiracy to murder, loansharking and illegal possession of weapons); United States v. Colombo, 777 F.2d 96, 99-100 (2d Cir. 1985) (reversing district court's revocation of a Magistrate Judge's pretrial detention order because testimony of defendant's former leadership role in a crime family provides clear and convincing evidence that defendant is a threat to the safety of the public and that no set of conditions short of detention adequately protects the public). Therefore, I find that the government has established by clear and convincing evidence that Riccardi presents a danger to the community, and that no set of release conditions can adequately assure the safety of the community.

Having decided that there is clear and convincing evidence of Riccardi's danger to the community, I must now consider Riccardi's argument that the length of his detention has become unconstitutionally excessive. The length, circumstances, and underlying rationale of a person's

pretrial detention implicates that person's Fifth Amendment right to due process. United States v. El-Hage, 213 F.3d 74, 79 (2d Cir. 1994). However, "[i]t is well-settled that so long as pretrial detention is administrative rather than punitive, it is constitutional." Id. The Second Circuit in El-Hage instructs that in determining whether a pretrial detention is constitutionally excessive this court should consider (1) the length of the detention; (2) the extent to which the prosecution is responsible for the delay of the trial; (3) the gravity of the charges; and (4) the strength of the evidence of Riccardi's dangerousness to the community. Id.

To expedite Riccardi's trial in an effort to reduce his pretrial detention, I have added Riccardi to the Urso I trial group. As a result, Riccardi will be in the first group to be tried in this case. Jury selection in the Urso I trial is expected to begin on May 8, 2006, and the trial will likely end no later than late August, 2006. As Riccardi was incarcerated beginning January, 2005, the duration of his pretrial detention will likely last approximately nineteen months. This is a lengthy detention. However, the Second Circuit has previously upheld similar and substantially lengthier detentions of a defendant. See United States v. Millan, 4 F.3d 1038, 1049 (2d Cir. 1993) (permitting a 30 to 31 month detention in a heroin trafficking case); United States v. Colombo, 777 F.2d 96, 101 (2d Cir. 1985) (finding constitutional the anticipated detention of a defendant for up to two years in a RICO prosecution); El-Hage, 213 F.3d at 81 (upholding 30 to 33 month pretrial detention); United States v. El-Gabrowny, 35 F.3d 63, 65 (2d Cir. 1994) (upholding 27 month pretrial detention). Moreover, "the length of a detention period will rarely by itself offend due process," but rather should be considered along with the other factors. El-Gabrowny, 35 F.3d at 65.

I also find that whatever responsibility shouldered by the prosecution for the length of

Riccardi's detention[7] must be balanced against the complexity of the matter, and Riccardi's failure to previously expedite his trial. Urso is a multi-defendant RICO prosecution alleging numerous predicate acts in the furtherance of the Bonanno OCF, and is designated as a complex case. The Second Circuit has previously allowed lengthy detentions partly on the basis that a complex case requires extensive pretrial preparation. El-Gabrowny, 35 F.3d at 65. Furthermore, Riccardi did not move for severance or an expedited trial until this motion. As a result, Riccardi bears at least part of the responsibility for the length of his own detention. See Colombo, 777 F.2d at 101.

    Critical to this inquiry, I find that the gravity of the charges and the strength of the evidence justify the length of the detention. As to the gravity of the charges, Riccardi argues that although the superseding indictment alleges that he participated in two predicate act murders, that his alleged participation in disposing of the bodies is less serious than other Urso defendants who are alleged to have been the "shooters" in the alleged murder predicate acts. This argument is without merit. It is axiomatic that the participation in murders in the furtherance of a crime organization is a serious charge. Accordingly, I find the nature of the charges against Riccardi to be serious. As for the weight of the evidence of Riccardi's dangerousness, as explained supra, there is strong evidence to support a finding of dangerousness.

    In light of the facts that Urso is a complex case requiring extensive pretrial preparation, that Riccardi has not sought a speedier trial until now, that he is charged with serious offenses, and that there is strong evidence of his dangerousness to the community, I find that the length of

---

[7] Although the prosecution did re-indict Riccardi, the superseding indictment was filed in January 2004, a year before Riccardi was ordered detained.

Riccardi's pretrial detention is not constitutionally excessive. Accordingly, Riccardi's motion to revoke the pretrial detention Order is denied.

### III.   CONCLUSION

Defendants Riccardi's and Romanello's motions are DENIED.

I hereby consolidate the following defendants into the first trial group ("Urso I"): Baldassare Amato, Anthony Basile, Michael Cardello, Peter Cosoleto, Joseph DeSimone, Steven LoCurto, John Palazzolo, and Richard Riccardi. Urso I is hereby scheduled to begin jury selection on Monday, May 8, 2006.

I consolidate the remaining defendants into the second trial group ("Urso II"): Louis Attanasio, Robert Attansio, Peter Calabrese, and Patrick Romanello. Urso II is hereby scheduled to begin jury selection on Monday, December 4, 2006. The parties in Urso II shall submit a proposed pretrial briefing schedule no later than Friday, February 17, 2006.

SO ORDERED.

Dated: February 2, 2006  
      Brooklyn, N.Y.                                         _____  
                                                                    Nicholas G. Garaufis  
                                                                    United States District Judge